**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**SOUTHWEST MATERIALS INC** | **CASE NO. 2:24-CV-01441**

**JUDGE JAMES D. CAIN, JR.**

**MAGISTRATE JUDGE LEBLANC**

# MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 32] filed by limitation plaintiff Southwest Materials Inc. ("Southwest"). Claimant Gerald Miller opposes the motion. Doc. 39. Claimant Louisiana Workers Compensation Corp. ("LWCC") adopts Miller's opposition. Doc. 43.

## I. BACKGROUND

This limitation of liability suit arises from injuries suffered by Gerald Miller while working on a materials barge, the SMI-101, owned and operated by Southwest on April 21, 2024, at the Port Aggregates, Inc. ("PAI") facility in Calcasieu Parish, Louisiana. Specifically, Miller alleges that he tripped on hydraulic hoses that ran along the deck surface of the SMI-101 while that barge was spudded down at PAI's facility. Doc. 28, att. 4, pp. 180, 219–20. Miller filed an admiralty claim and third-party complaint against Southwest as his employer and PAI as his borrowing employer, alleging that he was entitled to damages as a Jones Act seaman injured aboard a vessel as well as under general maritime and state law. Doc. 12. Limitation plaintiff Southwest moved for summary

judgment on seaman status. Doc. 28. The court granted that motion, finding that Miller did not qualify as a seaman and thus dismissing his claims for Jones Act negligence, unseaworthiness, maintenance and cure, and punitive damages. Doc. 45.

Miller raises claims against PAI under both the Jones Act and general maritime law negligence/Louisiana state law negligence. Doc. 12. PAI now moves for summary judgment on all claims against it, arguing that the claims fail because Miller cannot establish that PAI (1) was his borrowing employer under the Jones Act, (2) owned or controlled the barge on which he was working, (3) directed or controlled Miller's work, (4) otherwise owed Miller a duty of care, or (5) acted as a single business enterprise with Southwest. Doc. 32. Miller opposes the motion and claimant LWCC adopts his opposition. Docs. 39, 43.

## II.
## SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit

"significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

Because the court has already granted summary judgment on Miller's Jones Act claims, it need not address whether PAI qualifies as a borrowing employer under that statute. Miller alleges, however, that "[t]o the extent [PAI] is not deemed to be the borrowing employer of [Miller] nor deemed to be liable for the corporate Acts of [Southwest], then [Miller] maintains a general maritime law negligence claim and/or Louisiana State law negligence claim against [PAI] . . . ." Doc. 12, ¶ VIII. The relevant inquiry is thus confined to PAI's potential liability as a single business enterprise with Southwest and for negligence under state or general maritime law.

**A. Single Business Enterprise**

PAI maintains that it was only a customer of Southwest and that Louisiana law governs determination of any veil-piercing because Louisiana is the state of its incorporation. The court agrees that Louisiana courts "would most likely conclude that the law of the state of incorporation governs the determination of when to pierce a corporate veil," and that there is no sound basis for applying the law of another state since the accident also occurred in this jurisdiction.

Under Louisiana law, courts may "disregard the concept of corporate separateness and extend liability to each of the affiliated corporations" when two or more corporations constitute a single business enterprise ("SBE"). *Bona Fide Demolition and Recovery, LLC v. Crosby Const. Co. of La., Inc.*, 690 F.Supp.2d 435, 443 (E.D. La. 2010) (quoting *Brown v. Auto. Cas. Ins. Co.*, 644 So.2d 723, 727 (La. Ct. App. 1st Cir. 1994)). In *Green v. Champion Insurance Co.*, the Louisiana First Circuit Court of Appeal listed eighteen factors that could be considered in determining whether an SBE had been formed. 577 So.2d 249, 257–58 (La. Ct. App. 1st Cir. 1991), *writ denied*, 580 So.2d 668 (La. 1991). These factors are:

> 1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
> 2. common directors or officers;
> 3. unified administrative control of corporations whose business functions are similar or supplementary;
> 4. directors and officers of one corporation acting independently in the interest of that corporation;
> 5. one corporation financing another corporation;
> 6. inadequate capitalization ("thin incorporation");
> 7. [one] corporation causing the incorporation of another affiliated corporation;

> 8. [one] corporation paying the salaries and other expenses or losses of another corporation;
> 9. receiving no business other than that given to it by its affiliated corporations;
> 10. [one] corporation using the property of another corporation as its own;
> 11. noncompliance with corporate formalities;
> 12. common employees;
> 13. services rendered by the employees of one corporation on behalf of another corporation;
> 14. common offices;
> 15. centralized accounting;
> 16. undocumented transfers of funds between corporations;
> 17. unclear allocation of profits and losses between corporations; and
> 18. excessive fragmentation of a single enterprise into separate corporations.

*Id.* at 257–58.

The court emphasized, however, that the "list is illustrative and is not intended as an exhaustive list of relevant factors." *Id.* at 258. Accordingly, federal district courts considering *Green* have found an SBE even where several of the factors were not present. *Aker Solutions, Inc. v. Shamrock Energy Solutions, LLC*, 820 F. App'x 243, 246 (5th Cir. 2020) (collecting cases). Additionally, as courts have recognized, "some of the [*Green*] factors are perfectly consistent with legitimate, efficient business operations, such as common control, common employees, officers, and directors, shared offices, and some form of centralized accounting." *Bona Fide Demolition and Recovery, LLC*, 690 F.Supp.2d at 445 (citing James Dunne, *Taking the Entergy out of Louisiana's Single Business Enterprise Theory,* 69 La. L.R. 691, 695 (2009)).

Miller puts on no evidence or argument to oppose PAI on this issue. PAI shows that it does not share any employees or officers in common with Southwest. Doc. 32, att. 5, pp. 35, 264; doc. 32, att. 8, pp. 11, 18, 42–43. Drew Guinn, owner and operator of Southwest,

has an ownership in PAI. Doc. 32, att. 8, p. 11. He testified, however, that his role is limited to sitting on PAI's board and that he has no role in its day-to-day operations. *Id.* at 34, 42. Southwest also maintained separate offices and accounts, and invoiced its customers (including PAI). *Id.* at 8, 42–43; doc. 32, att. 7, p. 111. Other than Drew Guinn's ownership stake in PAI, there is no basis in the record from which the court could find that PAI and Southwest acted as an SBE. Accordingly, summary judgment will be granted on this issue.

**B. Negligence**

Miller also "maintains a general maritime law negligence claim and/or Louisiana state law negligence claim against [PAI] based on the acts enumerated below and others as may be uncovered during discovery." Doc. 12, ¶ VIII. PAI asserts that Miller cannot prevail on a negligence claim, whether under general maritime law or state law.

"The elements of a negligence cause of action are essentially the same as land-based negligence under the common law." *Withhart v. Otto Candies, LLC*, 431 F.3d 840, 842 (5th Cir. 2005). Louisiana courts determine liability for negligence based on a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Dev.*, 916 So.2d 87, 101 (La. 2005). Through this test the plaintiff must show all of the following:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006)). The negligence standard used under

general maritime law "is more or less the same." *Hicks v. BP Exploration & Prod., Inc.*, 310 F.Supp.3d 754, 759 n. 8 (E.D. La. 2018) (citing *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)). Under general maritime law and Louisiana law, a principal is not liable for the negligent acts of its independent contractor unless it "exercises operational control over or expressly or impliedly authorizes the independent contractor's actions." *Chiasson v. Brand Energy Solutions, LLC*, 452 F.Supp.3d 472, 478 (W.D. La. 2020) (quoting *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989)); *accord Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997) (applying Louisiana law). "Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003).

PAI maintains that Miller cannot establish liability through this exception, because the unsafe conditions were created by employees working under the exclusive control of Southwest. At the time of Miller's accident, Southwest was providing "coordination of barge transport [and] loading and offloading services" for PAI under a Stevedoring and Transport Service Agreement ("the Agreement"). Doc. 39, att. 1, p. 1. The Agreement provides that Southwest is an independent contractor. *Id.* at 2. It also states:

> XIII. SAFETY PRACTICES
>
> [Southwest] shall comply fully with all laws, orders, citations, rules, regulations, standards, and [statutes] with respect to safety. [Southwest] shall conduct inspections to determine that safe working conditions and equipment exist and accepts sole responsibility for the safety of its employees and any Subhaulers or other suppliers of equipment to perform the work covered by

> this Agreement in a safe, responsible, and lawful manner. [Southwest] shall make every effort to ensure that all barges and equipment used to provide the work covered by this Agreement are in safe operating condition and that they are operated on the project covered by this Agreement in compliance with all provisions of federal law and regulations where applicable, as well as the regulations related to motor carrier safety.

*Id.* at 6.

PAI's written Safety Program states, however:

> This program applies to all employees of [PAI], temporary employees and any contractors working for [PAI]. When work is performed on a non-owned or operated site, the operator's program shall take precedence, however, this document covers [PAI] employees and contractors and shall be used on owned premises, or when an operator's program doesn't exist or is less stringent.

Doc. 39, att. 2, p. 2. The Safety Program lays out several requirements, including inspection protocols. *See id.* at 5. As to general facility requirements, it provides:

> Each work site shall be kept clean and free from materials that could cause workers to slip or trip. A floor or other surface used by any worker shall be kept free of obstructions, hazards, and accumulations of refuse, snow or ice.

*Id.* at 3. Finally, the Safety Program tasks a PAI site manager with "implementation and maintenance of the plan for their site and ensuring all assets are made available for compliance with the plan." *Id.* at 2.

The parties do not dispute that Miller tripped over hydraulic hoses on the deck of the SMI-101, a vessel owned by Southwest but spudded down at PAI's facility in fulfillment of Southwest's stevedoring obligations under the Agreement. Southwest was therefore subject to PAI's safety program, which included specific measures governing how equipment could be maintained and operated. These safety protocols also tasked a site manager with ensuring compliance with measures, such as keeping work sites free of trip

hazards, that could have prevented Miller's accident. Accordingly, Miller may show that PAI exercised sufficient operational control to be held liable for any negligence giving rise to his accident or was independently negligent for its own failure to abide by the Safety Plan.

## IV.
## CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 32] will be **GRANTED** as to any claims premised on a single business enterprise between PAI and Southwest and as to any claims under the Jones Act, but **DENIED** as to Miller's negligence claims against PAI under state and general maritime law.

**THUS DONE AND SIGNED** in Chambers on the 19th day of August, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**