**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**SOUTHWEST MATERIALS INC**

**CASE NO. 2:24-CV-01441**

**JUDGE JAMES D. CAIN, JR.**

**MAGISTRATE JUDGE LEBLANC**

# MEMORANDUM ORDER

Before the court is a *Daubert* Motion [doc. 47] filed by claimant/third-party defendant Port Aggregates Inc. ("PAI") in this limitation proceeding. Claimant/third-party plaintiff Gerald Miller opposes the motion. Doc. 62.

## I.
## BACKGROUND

This limitation of liability suit arises from injuries suffered by Gerald Miller while working on a materials barge, the SMI-101, owned and operated by Southwest on April 21, 2024, at the PAI facility in Calcasieu Parish, Louisiana. Specifically, Miller alleges that he tripped on hydraulic hoses that ran along the deck surface of the SMI-101 while that barge was spudded down at PAI's facility. Doc. 28, att. 4, pp. 180, 219–20. Miller filed an admiralty claim and third-party complaint against Southwest as his employer and PAI as his borrowing employer, alleging that he was entitled to damages as a Jones Act seaman injured aboard a vessel as well as under general maritime and state law. Doc. 12.

The matter is set for bench trial before the undersigned on October 13, 2026. Doc. 19. The court granted Southwest's motion for summary judgment, finding that Miller did

not qualify as a seaman and thus dismissing his claims for Jones Act negligence, unseaworthiness, maintenance and cure, and punitive damages. Doc. 45. The court also granted in part and denied in part PAI's motion for summary judgment, dismissing any claims premised on a single business enterprise between PAI and Southwest and any claims under the Jones Act but denying the motion as to Miller's negligence claims against PAI under state and general maritime law. Doc. 55. Miller and PAI, respectively, have moved for reconsideration of the court's rulings on both motions for summary judgment. Docs. 53, 59.

PAI now moves to exclude or limit the opinion testimony of Miller's witness Captain Aaron J. Williams under Federal Rule of Evidence 702 and the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Specifically, it argues that Captain Williams's proposed testimony includes legal conclusions masquerading as expert opinions and that he has not provided a sufficient factual basis to support these conclusions. Doc. 47, att. 2. Miller opposes the motion. Doc. 62.

## II.
## LAW & APPLICATION

### A. Legal Standard

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must

consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based.[1] The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

**B. Application**

Miller's Rule 26(a)(2) disclosure describes Williams as:

> Marine and vessel safety expert to provide expert testimony concerning all issues of negligence, liability, dangerous acts, actions below the standard of care in industry and work environment, and all issues of negligence or

[1] The *Daubert* Court identified several additional factors for assessing whether the expert's methodology is valid and reliable, including whether the expert's theory had been tested and subjected to peer review, the known or potential error rate for the expert's theory or technique, the existence and maintenance of standards and controls, and the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). However, the same standards cannot be applied to all possible fields of expertise. Accordingly, the *Daubert* analysis is necessarily flexible and fact-specific. *Kumho*, 526 U.S. at 150.

> liability on the party of [Southwest and PAI], as well as any alleged comparative fault on the part of Miller, as addressed in Captain Williams's report.

Doc. 47, att. 4, pp. 1–2. Williams offers a number of opinions on conditions aboard the SMI-101 and the applicable safety standards, such as:

> **Opinion 3:**
>
> It is my opinion that Southwest Materials, Inc. failed to control the risk associated with the exposed hydraulic hoses through feasible engineering controls, administrative controls, or interim protection. It is also my opinion that Southwest Materials, Inc.'s safety management system is less stringent than [PAI]'s Written Safety Program Manual, and as applicable to its personnel, contractors, or worksite role, failed to use the hazard-identification tools available within its own safety management system manual to identify and facilitate mitigation of the risk associated with the hydraulic hoses and holes on the deck of the SMI 101.

Doc. 62, att. 1, p. 4.

PAI argues that Williams's testimony should be excluded or limited because he interprets the terms of PAI's Safety Program, providing legal conclusions and opinions on the ultimate issue and resolving apparent conflicts between the terms of the PAI Safety Program and the Stevedoring and Transport Service Agreement executed by Southwest and PAI. Doc. 47, att. 2. It also maintains that Williams lacks an adequate basis for his opinions, in that he provides no reliable methodology for his comparison of the PAI and Southwest safety programs or for his conclusions linking Miller's accident and PAI's safety program. *Id.*

Under Federal Rule of Evidence 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue." This rule, however, does not "open the door to all opinions." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Instead, as the Advisory

Committee notes make clear, witnesses are still forbidden from offering legal conclusions or telling the jury what result to reach. *Id.* The court agrees that contract interpretation is outside the permissible scope of Mr. Williams's testimony, and will come to its own conclusions as to which document governed PAI's duties in this matter. However, "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). Williams's testimony is well-founded and provides meaningful assistance to this court to the extent he bases it on the assumption that the PAI Safety Program governs, which the court will permit him to do. He is also sufficiently qualified to evaluate and compare the respective safety management systems used by Southwest and PAI, and the grounds provided in his report show adequate support for his opinions.

## III.
## CONCLUSION

For the reasons stated above, **IT IS ORDERED** that PAI's *Daubert* motion [doc. 47] be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 2nd day of September, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**